WILNER v DEPARTMENT OF LICENSING & REGULATION,
BOARD OF REGISTRATION FOR ARCHITECTS

Docket No. 78-5392. Submitted June 14, 1979, at Detroit.—Decided
October 1, 1979.

Ronald R. Wilner failed to pass the building construction section
of a seven-part examination given on December 10, 1974, by
the State Board of Registration for Architects. Upon review the
board declined to change his score. In 1973, the board had
changed the seven-part examination to a two-part examination
but allowed applicants until December, 1974, to pass the re-
mainder of the former seven-part examination. Candidates who
did not pass the seven-part examination by December, 1974,
were required to sit for the new two-part examination. Wilner
received notice of the changes in the examination format.
Appeal to the Oakland Circuit Court, William J. Beer, J.,
resulted in an affirmation of the board's decision not to change
his score. Plaintiff appeals, contending that he is entitled to
continue to take the old seven-part examination, that the
decision of the board affirming his failure of the building
construction part was not supported by competent material and
substantial evidence, that some of the questions related only to
aesthetics which were not relevant to the purposes of the
examination, and that the board's delay in scheduling a formal
review of his examination constituted a denial of due process.
*Held:*

1. The board is vested with broad discretion to determine the
format and contents of its examination and to change from a
seven-part to a two-part examination is well within its statu-
tory authority. The grace period was a matter within the
board's discretion and gave no person a vested right to continue
to take the old examination.

2. The Court of Appeals declines to order an examinee
certified when in the judgment of the certifying board his

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Architects § 2.
[2, 3] 51 Am Jur 2d, Licenses and Permits § 14.
[4] [No Reference]

performance does not meet the standard of the profession. Nor will the appellate Court sit as a superexamining board.

3. Public welfare embraces aesthetic as well as physical principle; therefore, aesthetic questions may be made part of the board's examination for the registration of architects.

4. The delay in scheduling formal review of plaintiff's examination was not a denial of due process. There was no showing of prejudice and a significant part of the total delay was attributable to the plaintiff himself.

Affirmed.

1. LICENSES — REGISTRATION — ARCHITECTS — STATE BOARD — EXAMINATIONS — FORMAT AND CONTENTS — DISCRETION.

The State Board of Registration for Architects is vested with broad discretion to determine the format and contents of its examinations for registration.

2. LICENSES — REGISTRATION — STATE BOARD — STANDARDS OF PROFESSION — APPEAL AND ERROR.

It is not the province of the Court of Appeals to order an examinee certified where in the judgment of the certifying board his performance does not meet the standard of the profession; furthermore, the Court of Appeals refuses to sit as a superexamining board.

3. LICENSES — REGISTRATION — ARCHITECTS — STATE BOARD — EXAMINATIONS — AESTHETIC QUESTIONS.

The concept of public welfare has been broadly defined to embrace aesthetic as well as physical principles; therefore, aesthetic questions may be asked as part of an examination by the State Board of Registration for Architects.

4. LICENSES — REGISTRATION — ARCHITECTS — STATE BOARD — EXAMINATIONS — REVIEW OF RESULTS — DELAY — PREJUDICE.

A delay in scheduling formal review of the results of an examination by the State Board of Registration for Architects is not a denial of due process where part of the total delay was attributable to the examinee and there is no showing of prejudice.

*Pasman & Weinstein,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gary L. Finkbeiner,* Assistant Attorney General, for defendant.

Before: J. H. GILLIS, P.J., and BEASLEY and R. M. RANSOM,* JJ.

J. H. GILLIS, P.J. On December 10, 1974, plaintiff took a seven-part examination to be registered as an architect. Plaintiff passed six of the seven parts but failed to pass the building construction part of the examination. Plaintiff requested that he be allowed to retake the portion of the examination which he had failed but the Board of Registration for Architects refused this request. Following informal and formal review of plaintiff's examination, the board declined to change his score.

Plaintiff appealed to the Oakland County Circuit Court. The circuit court affirmed the board's order and plaintiff appeals to this Court as of right.

Additional facts necessary for an understanding of this case are as follows: In March, 1973, the Board of Registration for Architects decided to replace the seven-part examination with a new two-part examination. A candidate who successfully passed any section of the seven-part examination would not be required to retake those portions. Applicants who passed four of the seven parts of the old examination by July 1, 1973, were given until December, 1974, to pass all seven sections. Those candidates who did not pass all seven parts by that time would be required to sit for the new examination. The new examination was given concurrently with the old examination in June and December of 1973 and 1974. Notices of these changes in the examination format were given to all candidates including plaintiff.

Plaintiff first contends that he was entitled to continue to take the old examination. Plaintiff bases his argument upon certain language in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

§ 12(1) of the Architecture, Professional Engineering and Land Surveying Act, MCL 338.562(1); MSA 18.84(12)(1), to-wit:

"A person who has commenced the taking of examinations provided under this act shall be permitted to complete the taking of those examinations notwithstanding any provisions hereto to the contrary."

When this language is examined in context it fails to sustain plaintiff's position. The entire subsection reads as follows:

"An applicant for examination for registration shall * * * have had not less than 8 years of professional experience in architectural or engineering work or land surveying, satisfactory to the board including up to 6 years of education satisfactory to the board.

"Beginning January 1, 1977, an applicant for registration shall have a baccalaureate degree acceptable to the board. A person who has commenced the taking of examinations provided under this act shall be permitted to complete the taking of those examinations notwithstanding any provisions hereto to the contrary." MCL 338.562(1); MSA 18.84(12)(1).

The first sentence of paragraph two was added by 1969 PA 141. The added requirement of a baccalaureate degree was a substantial change from the previous licensure requirements. The last sentence of the subsection was added by 1970 PA 20.

It is evident that the Legislature intended by this language to allow persons who had commenced taking the registration examinations prior to January 1, 1977, to continue to sit for the examinations after that date even if they did not possess a baccalaureate degree. This "grandfather" clause does not apply to plaintiff. Moreover, it

merely allows nondegreed applicants to continue to take the registration examinations and does not preclude the board from adopting a new examination format.

The board is vested with broad discretion to determine the format and contents of the examinations. Section 12(2) of the act provides:

"An applicant upon payment of the fees required under this act shall be granted examinations in such appropriate subjects as the board may require." MCL 338.562(2); MSA 18.84(12)(2).

Section 14 provides in part:

"When examinations are required, they shall be held at such time and place as each board shall determine. The scope of the examinations and the methods of procedure shall be prescribed by each board with special reference to the applicant's ability to design and supervise architectural, engineering, or land surveying works, which shall insure the safety of life, health, and property."

The board's decision to change from a seven-part to a two-part examination was well within its express authority under the above provisions.

The grace period given to those who passed four of the seven parts of the old examination by July 1, 1973, was not mandated by statute, but, rather, was a matter within the board's discretion. No person had a vested right in continuing to take the old examination.

Plaintiff also contends the decision of the board affirming his failure of the building and construction examination was not supported by competent, material and substantial evidence on the whole record. Plaintiff's argument is that some of the multiple choice questions had two correct answers

and others were related only to aesthetics and, therefore, not relevant to the purpose of the examination, which is to safeguard the life, health and property of the people of Michigan. MCL 338.551; MSA 18.84(1).

It is not the province of this Court to order an examinee certified when in the judgment of the certifying board his performance does not meet the standard of the profession. Nor can this Court sit as a superexamining board. *Nemer v State Board of Registration for Architects, Professional Engineers & Land Surveyors* 5 Mich App 286, 295; 146 NW2d 704 (1966).

Plaintiff attempted to challenge a number of questions through the testimony of a registered architect. The hearing examiner and board found the grounds upon which these questions were challenged to be insubstantial. Our review of this testimony leads us to the same conclusion.

Plaintiff's argument that questions relating to aesthetics were irrelevant is without merit. The concept of public welfare has been broadly defined to embrace aesthetic as well as physical principles. 16 Am Jur 2d, Constitutional Law, § 307, p 603.

Finally, plaintiff claims that the board's delay in scheduling a formal review constituted a denial of due process. Plaintiff did not request a formal review until December, 1975. At that time the board was involved with the regularly scheduled examination. Formal review was scheduled for October, 1976, and later adjourned until December, 1976. Thus, a significant part of the total delay was attributable to plaintiff himself. In addition, plaintiff has failed to show any prejudice resulting from this delay.

Plaintiff's remaining allegations of error merit no discussion.

Affirmed. Costs to appellee.